SEATTLE AND WALLA WALLA R. R. Co. *vs.* AH KOW, *et al.*

MOTION to dismiss.

In an appeal in equity, if objection be made to the sufficiency of the complaint to state a cause of action, it is not necessary that the evidence in the cause be certified into the Appellate Court, to enable it to review such alleged error.

The evidence in a cause can only be authenticated to this Court by the presiding Judge of the lower Court, or in a proper case of written testimony, by the clerk.

Where, during the pendency of a cause, after the introduction of the evidence and before judgment, another Judge succeeds the one who had thus far heard the cause, and parties proceed to final judgment upon the evidence as introduced, they will be held to have tacitly stipulated, that such was *the evidence* in the case; and upon that basis, the Judge who decided the case in the lower Court, is empowered to certify the evidence to this Court. The certificate of the former Judge gives no authenticity to the evidence nor does the certificate of the short-hand-reporter, appointed under the act of 1877, give any sanction to such evidence.

Only when the evidence consists wholly of written testimony, can it be certified by the clerk. Written testimony defined and the decision in *Colman vs. Yesler*, 1 W. T. R. 591–3, reviewed and explained.

OPINION on merits.

A common law count of *indebitatus assumpsit* will, under the code, support proof of a special or implied *assumpsit*. A court might in its discretion, on proper showing, require a more definite statement, though its failure so to do would not be error, unless shown to be an abuse of discretion.

Statement of the facts of the case.

The Mechanic's Lien Law, of 1877, was intended as a substitute for, and not as a continuation of the Act of 1873. All rights accrued under the earlier Act were repealed, except to the extent they were kept alive by the later act; while all remedies to enforce such preserved rights are under the provisions of the new statute.

Unless claims were filed in the time and manner prescribed by the law of 1877, for work which ended with the repeal of the statute of 1873, the liens were lost.

Allowance of attorney fees for foreclosure of lien.

Appeal from the Third Judicial District, holding terms at Seattle.

The complaint, the sufficiency of which is passed upon, in the opinion of the Court, is as follows: * * * * * The Defendant is indebted to the Plaintiff, .............. in the sum of

......... Dollars, on account for work and labor performed between the .. day of.... 187.., and the .. day of .... 187.., upon the Seattle and Walla Walla Railroad, in King County, W. T.,.at the request of said Defendant, by its agent, James M. Colman, duly authorized thereto, and no part thereof has been paid. * * * * In other respects, the facts of the case appear in the opinion.

*McNaught Bros.* for appellants, cited authorities as follows: That the complaint failed to state facts sufficient. Statutes Washington Territory, 1873, p. 441, § 2; 1877, p. 219, § 19; Phillips on Mechanic's Liens, § 119–20, *Willamette* v. *Smith,* 1 Oregon, 171; *Davis* v. *Alvord,* 4 Otto, 545; *Sympson* v. *Dalryple,* 11 Cush. 308.

That the contract having been made while the statute of of 1873 was in force, that statute was imported into it; and additional liabilities could not be imposed by subsequent acts. 2 Story Constitution, §§ 1384–5, and note on p. 277; · *Walker* v. *Whitehead,* 16 Wal. 314; *Van Hoffman* v. *City, etc.,* 4 Wal. 535; *Gann* v. *Barry,* 15 Wal. 623; 38 Cal. 361; 1 Sawyer, 710; 37 Iowa, 631.

That a retrospective effect should not be given to the statutes of 1877. Phillips on Mechanic's Liens, p. 33; *Plumb* v. *Sawyer,* 21 Conn. 351; *Parker* v. *M. R. Co.* 115 Mass. 580; *Donohy* v. *Clapp,* 12 Cush. 440.

*Thos. Burke* and *Allen Bros.* for appellees, cited, among others, the following authorities: As to when liens attached and expired. *Soule & Page* v. *Dawes,* 7 Cal. 576; *Crowell, et al.* v. *Gilmore, et al.* 13 Cal. 55; *In Re Hope M. C.,* 1 Sawyer, 711; *Irey* v. *White,* 50 Miss. 142; *Douglass, et al.* v. *St. Louis Z. Co.* 56 Mo. 388; *Choteau, et al.* v *Thompson, etc.* 2 Ohio St. 115; *Davis* v. *Alvord,* 4 Otto, 548.

That the act of 1877 was to be regarded a continuation and extension of, and not a repeal of that of 1873. 1 Sawyer, 711 and 712; *Steamship Co.* v. *Joliffe,* 2 Wall. 450; *Wright* v. *Oakly,* 5 Metcalf, 400; *Skyrme* v. *Occidental M. Co.* 8 Nevada, 234; *Capron* v. *Strout,* 11 Nevada, 310.

That the means of enforcing a contract at the time it is

made, are a part of it, and cannot be destroyed without impairing the contract. Sedgwick on Stat. and Const. Law, p. 643–53; Cooley Const. Limt. 290–91; *McCracken* v. *Hayward*, 2 Howard, 608; *Broson* v. *McKinzie*, 1 id. 311; *Quackenbash* v. *Danks*, 1 Denio, 128; *Weaver* v. *Sells*, 10 Kansas, 619; *Phillips, et al.* v. *Mason, et al.* 7 Heisk (Tenn.) 62; 56 Mo. 400.

As to the sufficiency of complaint. *Allen* v. *Patterson*, 7 N. Y. 479; *Wyot* v. *Alord*, 1 Salkeld, 325; *Mc Rea* v. *Craig*, 23 Cal. 525, and that no express contract is required. Houck on Liens, §§ 130 and 154; *Moran* v *Carrall*, 35 Iowa, 26.

*Opinion on motion to dismiss, per Greene, C. J.*

In this motion to dismiss, the appellees urge, that what purports to be the evidence is not sufficiently well certified to fulfill the requirements of § 453 of the Civil Practice Act and § 10 of the act creating an Official Short Hand Reporter. We do not understand it to be questioned, but that, aside from the evidence, the clerk's certificate sufficiently informs us that we have a full transcript. It therefore, becomes material to inquire, whether the issues, which the appeal presents, are such as to call for a review of evidence. Looking into the record, we discover, that at least, one objection to the judgment below arises from an alleged lack of support in the pleadings. Light to explore the legal sufficiency of these pleadings can not be furnished by testimony. Given, however, pleadings good in law to sustain the judgment, and it then becomes necessary to produce the proofs and decide whether they too are sufficient.

Objection is made that the complaint contains no cause of action. Inspection of the clerk's certificate, transmitting the transcript, shows that we have the complaint and the judgment here. No evidence can be anything but surplusage in determining the question of jurisdiction thus presented. To compel a defendant, resisting a bad complaint, to bring up evidence would be folly and oppression, for the transcript is full and complete without it. He was subjected to vexation and cost enough, in being obliged to push through the lower court over proofs unreasonably arrayed against him. Entering this court to get redress, he ought not to be compelled to transport and

marshal against himself, at his own expense, the futile forces of his adversary.

Several certificates in this transcript would seem to have been procured out of commendable caution, and yet to be in fact entirely superfluous. The parties had, it appears, begun to try the cause in the District Court, and had proceeded so far, with the aid of the official reporter, as to have put in all their testimony and exhibits, when the proceedings were interrupted by the incoming of a successor to the presiding judge. Rehearing before the new officer followed as of course. Expenses of re-introduction of proofs was obviated by both parties tacitly treating the notes of the reporter and the exhibits as if they correctly presented the evidence. Neither party ever questioned the propriety of hearing and determining the cause upon that basis, and accordingly thus it was heard and thus it was determined.

Getting the evidence up into this court, by proper certificates, seems to have been, under the circumstances, a matter of some perplexity, and it was sought to be accomplished by procuring one certificate from the retiring judge, a second from the incoming judge, and a third from the clerk, all under § 453, and still a fourth from the reporter under § 10. These certificates were all valueless except that from the incoming judge. He alone tried the case, and he alone could certify what constituted all the evidence on which he tried it. Only when the evidence consists wholly of written testimony, can it be certified by the clerk (§ 453); and written testimony is such only as after reduction to writing has received the assent of the witnesses, (*Colman* v. *Yesler*, 1 W. T. R. 591–3.) For the reporter's certificate there could be no use, because the cause was not tried on the evidence taken down by him, as upon evidence taken under the Reporter's Act, but rather as upon a certain mass of writing, having no longer any official solemnity or sanction for the purposes of that trial, but utilized, by consent of parties, for convenience's sake, to speak the facts as they would be spoken if the witnesses were recalled.

*Gowan* v. *Petit, et al., Pincus, et al.* v. *Light,* and *Col-*

*man* v. *Yesler* have been cited by counsel to sustain this motion. Of these cases, the first two differ from the one before us, in not presenting any question of insufficiency of the pleadings, and the last differ from all, in having, aside from the evidence, a defective Clerk's certificate. Dismissal in the last case was granted upon the ground that the certificate brought up nothing at all. In delivering its opinion, the Court intimated that they were satisfied, from what they saw in the record, that all the evidence could not be produced before them, and that consequently it would not be likely to avail the appellant to get an amendment of the certificate. We did not, at the time, have fairly before us the question, whether, if the pleading were objected to, we would insist on having the evidence brought up on pain of otherwise not hearing the case, and our suggestions about the impossibility of reaching the evidence must be taken as importing that the complaint was not regarded open to the exceptions urged to it. It is our present opinion, that when the objection to the judgment is that it does not consist with the pleadings, then it is not necessary to bring up the evidence, but that otherwise the production of the evidence is essential.

Let the motion be denied.

*Opinion on merits per Greene, C. J.*

The appellees filed their complaint below to enforce labor liens, and after decree in their favor are brought here on appeal. Hasty reading of their complaint might impress one, that under our code system of pleading, it does not sufficiently set out the fact of indebtedness, and on this ground, it is assailed by the defendant. Evidently, it was modeled on a common law count of *indebitatus assumpsit,* and we do not doubt its allegations would have stood good, as such a count, at common law. Enough appears in it, we think, to support proof either of a special or implied *assumpsit.* A court might, in its discretion, upon motion to make such a complaint more definite and certain, allow the motion, especially if peculiar facts were shown rendering it likely that justice would be thereby promoted. Refusal, however, would be no ground to invoke the action of

an appellate tribunal, unless there was a plain abuse of discretion.

The facts, as we gather them from the pleadings and proofs, show labor of such a description as would entitle to liens, either under §§ 2 and 5 of the Lien Law of 1873, or §§ 19 and 23 of the Lien Law of 1877, and may be briefly stated, with sufficient fulness and precision to answer all present purposes, as follows:

Heavy excavation and grading was needed to construct that part of appellant's road-bed, which lies between Rentonville and Newcastle. In order to accomplish the work, the appellant, on the 22d day of June, 1877, entered into a contract with one L. D. Frank, whereby the latter was to move at agreed rates whatever earth, gravel or stone might be encountered in the course of the undertaking. Subordinate workmen were procured by Frank, under an agreement, made between him and certain Chinese, not parties to this litigation, who, by the terms of the latter agreement, and in consideration of a share in the profits of his contract with appellant, agreed to and did supply him with laborers for his enterprise. These appellees were among the laborers so supplied. Held by no special contract made with themselves, they worked by the day or half-day, and were to be paid at the rate of so much a month, according to the actual time spent in labor. Each belonged to a gang of twenty-five or thirty, superintended by an overseer or "boss," who kept in a book a tally of their time. Lack of the time-books thus kept is one of the features in this case, and either because of that lack or from want of memory in the witnesses, or from some other cause, the days on which any particular plaintiff worked is—save in three instances—involved in impenetrable obscurity. On the testimony it perhaps sufficiently appears, that none of the appellees were paid for any work done in November or December, and that many of them worked continuously during both months, till and including December 17th, but who, any of them, save three, were does not appear. Really, it is impossible, by any process, to pronounce upon some probably meritorious claims, because we cannot tell to whom by name the claims belong. During the months of No-

vember and December, however, up to and including the 17th day of the latter month, Hom Wah, Guom King Goi and Lee Kee, three Chinese bosses, worked for Frank, as appears from the testimony, at the rate of thirty dollars per month, for such a number of days to have earned respectively, the sums of $17.90, $32.40 and $25.60. Some of this work of theirs was done prior to the 8th day of November, the day on which the last Mechanic's Lien Law was approved and went into effect, and the rest of it was done subsequently. An apportionment of the whole amount between the period before the approval of that act and the period after cannot be arrived at upon the testimony unless by applying some principle of computation. No notice of lien was filed in the auditor's office by these three or by any others of the appellees, until the 19th day of January, 1878, on which day, all of them, without exception, caused to be filed in that office notices, good and sufficient in form, that they claimed liens upon the railroad for their work. Diligent search of the somewhat voluminous transcript in this case, and careful examination of the testimony, have assured us that the foregoing are all the facts material to our decision.

The Judge of the District Court seems to have been able to find an indebtedness in a sum certain, in favor of each of the appellees, but no satisfactory basis for such a finding is disclosed to us, either in the pleadings or evidence. He appears to have found further, regarding all, that they worked until and including the 17th of December. Evidence or admission to sustain this, in case of any, except the three already mentioned, is, we are convinced, entirely wanting.

From this survey of the facts, we pass to inquire as to the law, which must control our judgment. Under the Lien Act of 1873, or that of 1877, or both, the rights and remedies intended to be given are, to a great degree, alike, and the general aim of the two acts is, for the most part, so far as they deal with similar matter, the same; and yet, on a careful comparison of the two throughout, we are thoroughly satisfied that the latter is intended as a substitute for, and not in any of its provisions as a continuation of the former. Liens or rights accrued,

and actions or proceedings commenced, under the old law, are fully kept alive by § 38 of the new, but the old law itself is repealed. No lien, right, action or proceeding survives because of the survivals of the old law, but rather only because in the destruction of the old it is rescued and revived by the new. Every proceeding to enforce a right, accrued under the older statute, must conform, as far as practicable, to the requirements of the younger. Sixty days after the completion of the work in hand, or in case of railway labor or material, from the last day of the month, in which the labor was done, or material furnished, was the time granted to all persons, by the law of 1873, within which to file their lien notices. Sixty days from the completion of the work or from cessation of labor thereon, is, under the law of 1877, allowed to the original contractor only, and every person save him has but thirty days. The lien claimants in any case, whose labor ended on the day the old law perished, would be obliged to file their notices under the new law, and unless they were original contractors, would have no more than the thirty days, limited therein, within which to do it.

Here the labor of appellees, prior to the 8th of November, was not done under any continuing contract to which they were privy, and which as an entirety, ran on beyond that day and was upon supervention of the new statute, recognized therein, and presented for completion, but it was a service from day to day, freely divisible, to which the new law put a full stop. Every shovelful of excavation afterwards was lifted under the new law.

Referring now to the character of appellees' services, and to the time when their notices were filed, we see at once that none of them were original contractors and none of them filed their notices within thirty days after the approval of the new law. Energy, therefore, to create or preserve a lien for work done prior to that date did not reside in the notices, and liens as to any such work must be denied an existence. Only the three overseers above-named have proved their claims with sufficient certainty to entitle them to judgment for labor since that date. For determining what the fair money value of this part of the

entire labor of the overseers is, we think it equitable, under all the circumstances, to resort to the method of average. The whole time overspread by their unpaid work is forty-seven days, eight of which were expired before the new law became operative. Hom Wah, Gwom King Goi and Lee Kee are, therefore, entitled to liens for 39-47 of $17.90, $32.40 and $25.60, respectively. Each of them will have judgment accordingly, and the judgment of the District Court as to each of the other appellees will be reversed.

Let the three named appellees be allowed an attorney fee of one hundred dollars and their costs and disbursements in this Court and the District Court, and let this cause be remanded to the District Court for further proceedings.